UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-12477-RWZ

MARIA MANUELA ANDRADE-HERMORT

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of the Social Security Administration

MEMORANDUM OF DECISION

November 6, 2017

ZOBEL, S.D.J.

Plaintiff Maria Manuela Andrade-Hermort appeals from a final decision by the Acting Commissioner of Social Security ("the Commissioner") upholding the ruling of the Administrative Law Judge ("ALJ") that denied her application for Social Security Disability Insurance Benefits ("SSDI"). Docket # 10. Plaintiff contends that the ALJ's finding that she could perform her past work was not supported by substantial evidence, and relatedly, that the ALJ erred by failing to consider the effects of her impairments when determining her residual functional capacity. The Commissioner filed a cross-motion seeking an order to affirm the decision. Docket # 13.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill has been substituted for Carolyn W. Colvin as Acting Commissioner of the Social Security Administration.

I.     **Background**

Plaintiff filed an application for SSDI on February 11, 2014, alleging disability due to "inflamatory [sic] [rheumatoid arthritis], DDD back, possible Lyme Disease, brain aneurysm s/p surgery with shunt in situ, HBP, risk of bleeding, right CTS-trigger finger-arthritis, impaired balance with falls, and L knee disorder" beginning April 2, 2012.  R. at 143.[2]  Her claims were first denied on April 15, 2014, and again upon reconsideration later in July 2014.  Plaintiff filed a request for a hearing before an ALJ, and a hearing was held on August 19, 2015.  At the hearing, a vocational expert ("VE") testified.

   A.     **Applicable Statutes and Regulations**

To receive SSDI benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A); see also 20 C.F.R. § 404.1505(a).

The ALJ analyzes whether a claimant is disabled by using an established "five-step sequential evaluation process."  See 20 C.F.R. § 404.1520(a)(4)(i)–(v).  Under this framework, the ALJ first determines whether the claimant is currently engaging in substantial gainful work activity.  If not, then at step two, the ALJ decides whether the

---

[2] "R." refers to the Social Security administrative record, which was electronically filed in this appeal.  Docket # 8.

claimant has a "severe" medical impairment or impairments, which means the impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 404.1520(c). If the claimant has a severe impairment or impairments, the ALJ considers, third, whether the impairment or impairments meets or equals an entry in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement. If so, then the claimant is considered disabled. If not, the ALJ must determine the claimant's residual functioning capacity ("RFC"), which is "the most [a claimant] can still do despite [her] limitations," 20 C.F.R. § 404.1545(a)(1). The ALJ then moves to step four and determines whether the claimant's RFC allows her to perform her past relevant work. If the claimant has the RFC to perform her past relevant work, she is not disabled. If the claimant does not, the ALJ decides, at step five, whether the claimant can do other work in light of her RFC, age, education, and work experience. If the claimant can, she is not considered disabled; otherwise, she is. "Once the applicant has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden, at Step 5, of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see also 20 C.F.R. §§ 404.1512(3), 404.1560(c)(2).

  B.  The ALJ's Decision

In a September 24, 2015, written decision, the ALJ found that plaintiff was not disabled under the Social Security Act. He first concluded that plaintiff did meet the insured status requirements of the Social Security Act through December 30, 2012. See 42 U.S.C. § 423. Then, he structured his decision around the five-step sequential

evaluation process. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability, and at step two, that she has several severe impairments: fibromyalgia and associated lower back pain, and arthritis.[3] See 20 C.F.R. § 404.1520(c). Nonetheless, he determined at step three that she does not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 because "the medical evidence does not show a gross anatomical deformity [or] findings based on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis (Listing 1.02)." R. at 20. Before moving to step four, he wrote:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can lift 20 pounds occasionally, and 10 pounds frequently; stand or walk at least 6 hours in an 8-hour workday; sit (with normal breaks), about 6 hours in an 8-hour workday; frequently climb or balance, stoop, kneel, crouch, or crawl, but never climb a ladder; and, she must avoid concentrated exposure to hazards.

Id. He found plaintiff's allegations only "partially credible" because the "treatment notes in the record do not support the conditions to which she testified." R. at 22. Specifically, although she testified that she had "painful joints and swelling in her lower back, shoulders, elbows, hands, knees, and ankles, and . . . was having a difficult time climbing stairs," id. at 21, the objective medical evidence reflected that plaintiff in December 2012 had "a full [range of motion] of all joints, 5/5 strength throughout; mild

---

[3] The ALJ further noted that "the record shows and/or that the claimant alleges additional conditions such as risk of bleeding, a brain aneurism [sic] status post surgery with (VP) shunt in situ, possible Lyme's Disease, and depression/anxiety." R. at 19. He found, however, that after reviewing the evidence, "these conditions [were] controlled, minimally treated, not treated at all, or that they lack objective medical evidence of a diagnosis, treatment, or functional limitations in support thereof." Id. Thus, the ALJ ultimately concluded that these additional alleged conditions "have little to no impact on the claimant's ability to do work like activities, and, at worst, [are] non-severe in nature." Id.

4

tenderness to palpation at multiple joints (hands, wrist, elbows, knees, and ankles); a full sensation to light touch; normal patellar reflexes; 5/5 strength throughout, including hip flexors; low back pain with a negative straight leg raise bilaterally; and no evidence of active synovitis." Id. at 22. "Accordingly, [he found] that although the claimant experiences some limitations, they are only found to be to the extent described in the [RFC]." Id. At the fourth step, the ALJ determined that, based on the VE's testimony, plaintiff was capable of performing past relevant work that included light, semi-skilled positions as a Social Service Aide[4] and as a Teacher's Aide. Accordingly, the ALJ concluded that plaintiff was not disabled through the date last insured.

### C. The Appeal

Plaintiff appealed the ALJ's decision to the Social Security Administration's ("SSA") Appeals Council, which denied review on October 7, 2016. The ALJ's decision thus became the final decision of the Commissioner. Plaintiff now seeks reversal of the final determination under 42 U.S.C. § 405(g).

## II. Standard of Review

The Commissioner's findings of fact are conclusive if based on the correct legal standard and supported by substantial evidence. 42 U.S.C. § 405(g); Seavey, 276 F.3d at 9. Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). So

---

[4] In the Work History Report, plaintiff identified the following prior job titles: "Case Manager"; "Residential instructor"; and "Teacher's aid [sic]". R. at 155. During the hearing, the VE identified plaintiff's relevant prior work to correspond with the following titles and Dictionary of Occupational Titles ("DOT") code: Social services aide (DOT 195.367-010) and teacher's aide (DOT 249.367-074). Accordingly, "Social Service Aide" is synonymous with "Case Manager".

5

long as the Commissioner's determinations are supported by substantial evidence, they must be affirmed, "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). Further, resolving credibility issues "and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)). Questions of law are reviewed de novo. Seavey, 276 F.3d at 9.

## III. Discussion

Plaintiff maintains that her "impairments prevented her from doing any of her past relevant work," Docket # 10-1, at 6. Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence because he failed to consider the effects of her impairments, such as pain, fatigue, and dizziness, on her ability to work, and failed to make "findings as to [her] concentration, persistence and pace, and memory in the RFC," id. at 7. She contends that both the medical records and her testimony "show that she had impaired mobility," id., that prevented her from climbing stairs on home visits, which was part of her job requirements as a case manager.[5]

---

[5] The Commissioner attempts to side-step this argument by claiming that "the ALJ did not conclude that Plaintiff could perform that type of past relevant work [i.e., being a case manager who had to climb steps]," but rather found that plaintiff "would still be able to perform work as a social service aide . . . with her impairments and the assessed RFC." Docket # 14, at 15. This argument is both perplexing and incorrect. The ALJ never addressed the issue of climbing steps, nor asked the VE what are the job requirements for a case manager. Instead, in the hypothetical he presented to the VE, he assumed that the "individual has the ability to frequently climb," R. at 47 (emphasis added).
    Further, the record is missing page three of plaintiff's work history report, dated March 3, 2014, which appears to have included the job description of her role as a Teacher's Aide. See id. at 174–75 ("Page 2 of 8" followed by "Page 4 of 8"). Although plaintiff failed to put in issue how her limitations prevented her from satisfying the requirements of being a teacher's aide, it is unclear how the ALJ could have concluded that plaintiff had the RFC to perform her past job as a teacher's aide without an understanding of what the job entails. See 20 C.F.R. § 404.1520(f) (requiring ALJ to compare his RFC assessment with the physical and mental demands of plaintiff's past relevant work).

The ALJ determined that plaintiff had several severe impairments, including fibromyalgia. Nevertheless, he found that plaintiff's testimony regarding her physical limitations and the effects of pain were only "partially credible" because the "treatment notes in the record do not support the conditions to which she testified," R. at 22. He ultimately determined that plaintiff had the RFC to "lift 20 pounds occasionally, and 10 pounds frequently . . . frequently climb or balance, stoop, kneel, crouch, or crawl, but never climb a ladder[,]" id. at 20. But "once the ALJ accepted the diagnosis of fibromyalgia, [he] also 'had no choice but to conclude that the claimant suffer[ed] from the symptoms usually associated with [such condition], unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms.'" Johnson v. Astrue, 597 F.3d 409, 410 (1st Cir. 2009) (per curiam) (quoting Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994) (emphasis in original)). Here, there was no such substantial evidence to support the ALJ's finding.

The ALJ relied on the treating physicians' notes to find that plaintiff's allegations were only "partially credible" because the treatment notes reported that plaintiff had no neurological abnormalities, "a full [range of movement] of all joints," "a full sensation to light touch," and "5/5 strength throughout," R. at 22. But the First Circuit has recognized that "'[t]he musculoskeletal and neurological examinations are normal in fibromyalgia patients, and there are no laboratory abnormalities.'" Johnson, 597 F.3d at 410 (quoting Harrison's Principles of Internal Medicine 2056 (16th ed. 2005)). "Rather, 'a patient's report of complaints, or history, is an essential diagnostic tool' in fibromyalgia cases," Johnson, 597 F.3d at 412 (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003)). Here, the medical evidence record reflects that plaintiff asserted multiple

7

complaints of her pain prior to her alleged onset date and through the date last insured (i.e., December 30, 2012). Indeed, plaintiff's medical records reflect that "she has had [a] history of joint pain and achiness." R. at 210. None of the treatment notes discredit her complaints. See Johnson, 597 F.3d at 414. In 2010, plaintiff's primary care physician found that "[h]er knee [was] very swollen. There [was] swelling inside of the joint, tenderness right along the joint line." R. at 214. In January 2012, she again "presented with knee pain" and described it as "aching, stiffness and swelling," and the treatment notes reflect there was "joint tenderness," id. at 233–34. Dr. Friday, a rheumatologist who examined plaintiff in December 2012, "found that the claimant had . . . mild tenderness to palpation at multiple joints (hands, wrist, elbows, knees, and ankles) . . . ; low back pain with a negative straight leg raise bilaterally; and, no evidence of active synovitis," id. at 22. At a later visit in January 2014 with another rheumatologist, Dr. Hait, plaintiff "continue[d] to have [] aching and burning pain in her hands, knees, elbows, shoulders and feet," and was found to have "trigger points 12/18," id. at 257; cf. Johnson, 597 F.3d at 410 ("The American College of Rheumatology nonetheless has established diagnostic criteria that include 'pain on both sides of the body, both above and below the waist, [and] point tenderness in at least 11 of 18 specified sites.'") (quoting Stedman's Medical Dictionary, at 671 (27th ed. 2000)); see also Ramos-Birola v. Astrue, No. 10-12275-DJC, 2012 WL 4412938, at *12 (D. Mass. Sept. 24, 2012) ("'trigger point' and 'tender point' are sometimes used interchangeably to describe the sites in a[] [rheumatology] exam").

The ALJ also placed "great weight" on two non-examining state agency medical consultants' assessments because he found that "they are consistent with, and

supported in the medical record," R. at 22. The non-examining consultants found that plaintiff's "statements on physical limitations are . . . partially credible based on the totality of the evidence," R. at 58, 69, because "[t]here are no clinical findings supporting the alleged limitations with standing or sitting." Id. But "the lack of objective [clinical] findings to substantiate her condition . . . is what can be expected in fibromyalgia cases." Johnson, 597 F.3d at 412–13. The consultants relied solely on a review of plaintiff's medical record in order to complete plaintiff's physical RFC assessment. There is nothing in the medical evidence record, however, that supports their RFC assessments—and thereby the ALJ's RFC determination—that plaintiff can occasionally lift twenty pounds, frequently lift ten pounds, stand and/or sit about 6 hours in an 8-hour workday, and frequently climb, kneel, stoop, crawl, and crouch. See R. at 59, 70.[6] Thus, the ALJ erred in attributing "great weight" to these assessments in determining plaintiff's RFC. See Strother v. Astrue, No. 09-30122, 2011 WL 808873, at *7 (D. Mass. Mar. 2, 2011) (finding that it was error to place significant weight on non-examining physician in a fibromyalgia case because doctor "could not make his own independent observations of Plaintiff's mobility or immobility"); see also Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994) ("We have held that the amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert."). On remand, the Commissioner should consider her assessment of plaintiff's credibility—and relatedly, her RFC determination—in light of Johnson.

---

[6] Although in plaintiff's Function Report, she states that she is able to perform household tasks, drive, shop for groceries, read, watch t.v. and knit, R. at 165–68, she also reports that it was "difficult" to kneel and bend, and that she could not drive a car for long distances. R. at 37. Thus, it is unclear how these activities of daily living specifically support an RFC assessment that concludes plaintiff is able to frequently climb, kneel, stoop, crawl, and crouch.

**IV.   Conclusion**

Plaintiff's Motion to Reverse or Remand the Decision of Commissioner (Docket # 10) is ALLOWED, and Defendant's Motion to Affirm the Commissioner's Decision (Docket # 13) is DENIED.

The case is remanded to the Commissioner for further findings of plaintiff's functional capacity in light of the admitted diagnosis of fibromyalgia and her testimony detailing her limitations.

| November 6, 2017 | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL |
| | SENIOR UNITED STATES DISTRICT JUDGE |